This appeal involves the question of whether a majority of the lot owners in a residential subdivision could remove the restrictive covenants which had been imposed upon the lots when the subdivision was initially platted. The trial court granted summary judgment in favor of the lot owner who was alleged to be in violation of the restrictive covenants, and the plaintiff appealed. We affirm.
Appellant Richard O. Hill commenced this action in the Circuit Court of Autauga County, seeking a declaratory judgment and a permanent injunction against W. C. Rice prohibiting him from violating restrictive covenants in the Forrest Hills subdivision in Autauga County.
The Forrest Hills Subdivision is located in a rural area in Autauga County outside the city limits of Prattville. It was developed in September 1961 by D. L. Yarbrough and Louise C. Yarbrough. In the course of developing the subdivision, the Yarbroughs imposed certain "protective covenants" on the lots. Three of these protective covenants are pertinent to this appeal, and are as follows:
 "(1) The restrictions herein set out shall run with the land and shall be binding upon all parties and persons claiming under them until Jan. 1, 1980, at which time said covenants and restrictions shall automatically be extended for successive periods of ten (10) years, unless by vote of majority of the then owners of the lots it is agreed to discontinue or to change said covenants in whole or in part.
"* * *
 "(4) No structure other than one detached single family dwelling and one private garage for not more than two cars shall be erected, placed, altered or permitted to remain on any lot embraced in this tract.
"* * *
 "(7) No residential structure shall be erected or placed on any building lot consisting of less than one full lot as shown on the recorded plat."
At the time Hill purchased his undeveloped lots in 1985, there had been substantial violations of the covenants. In fact, Rice, the defendant below, had begun placing crosses on his lots (which is the violation complained of by Hill in this lawsuit) as early as 1979, and he has added to them periodically since that date. After Hill purchased lots one and two, but prior to the filing of this case, a majority of the owners of the lots in the subdivision executed a document which eliminated all protective covenants from the subdivision. This was done purportedly in accordance with the specific procedure set forth in the first protective covenant, which states that after January 1, 1980, a "majority of the then owners of the lots" in the subdivision could discontinue or change the covenants in whole or in part. Owners of ten of the twelve lots voted to eliminate the protective covenants. The document entitled "Elimination of Protective Covenants of Forrest Hills Subdivision" was signed May 9-13, 1985, and was filed of record in the office of the judge of probate of Autauga County on May 14, 1985.
After the hearing on the summary judgment motion, the trial court entered the following order:
 "1. The developers of Forrest Hills Subdivision placed restrictive covenants on the lots in 1961 providing for the covenants to run with the land for 10 years [sic] and then to be extended unless a vote of a majority of the then owners discontinued or changed the covenants in whole or part. A majority of the landowners exercised their right to discontinue these covenants on May 14, 1985, by filing an instrument eliminating Protective Covenants for Forrest Hills Subdivision. The Court find [sic] considering the facts, that the landowners in exercising their rights to eliminate these covenants were reasonable and that the Protective Covenants on said property were therefore eliminated on May 14, 1985. *Page 384 
 "2. Upon considering the general scheme or plan of the subdivision and how the subdivision has been used for the past 30 years, [and] how the subdivision has developed to its current condition, the elimination of the covenants were [sic] not inconsistent with the general scheme and was a reasonable exercise of the property owners' rights considering the condition and use of the subdivision. Plaintiff purchased his property on the 25th day of April, 1985. Any reliance on said restrictions by Plaintiff is suspect and there is no evidence of reliance or damages by Plaintiff so that consideration is not a factor.
 "3. The Court further finds that the elimination of the covenants, after a 24 year history with its consistent long term violation of use, would not be inconsistent with the grantors' original intention.
 "4. The Court further finds an enforcement of the restrictions would be inequitable.
 "It is therefore ORDERED, ADJUDGED and DECREED by the Court that the relief prayed for in the Petitioner's complaint be and the same is hereby denied and that the . . . Protective Covenants in Forrest Hills Subdivision [were] eliminated as of May 14, 1985."
Hill contends that covenant number one was effective at the time he bought his lot, because the restrictive covenants were to continue until January 1, 1980, and then to automatically continue for 10 years, unless discontinued or modified by vote of "the majority of the then owners of the lots." (Emphasis added.) Hill claims that because there was no election by a majority of the "then" owners, on or before January 1, 1980, the covenants were effective for an additional 10 years, and that the election of May 14, 1985, was ineffective to remove the restrictions.
The law is that where the language of a restriction is clear and unambiguous, it will be given its plain and manifest meaning. Tubbs v. Brandon, 374 So.2d 1358 (Ala. 1979); Laney v.Early, 292 Ala. 227, 292 So.2d 103 (1974). It is also well settled that restrictions on the use of land are not favored in the law, and such restrictions are strictly construed in favor of the free use of such property. Springdale Gayfer's Store Co.v. D. H. Holmes Co., 281 Ala. 267, 201 So.2d 855 (1957); Reetzv. Ellis, 279 Ala. 453, 186 So.2d 915 (1966). This Court also stated in Springdale Gayfer's Store Co., supra:
 "Where the language of the restriction is clear and unambiguous, it will be given its manifest meaning, but its construction will not be extended by implication or include anything not plainly prohibited and all doubts and ambiguities must be resolved against the party seeking enforcement. Bear v. Bernstein, 251 Ala. 230, 231, 36 So.2d 483, 14 A.L.R. 2d 1372." (Emphasis added.)
281 Ala. 267, 277, 201 So.2d 855, 865.
Applying these principles of law to the facts of this case, we are of the opinion that while the construction placed on the language of the covenants by Hill is one which could be reasonably made, we cannot say that the language is so clear and unambiguous that a majority of the lot owners could not remove the covenants as they did in this case. While it is clear that the restrictions were binding upon all parties and persons claiming under them until January 1, 1980, it is not clear that the intent of the covenants was that a majority of the owners could not agree to remove the restrictions after that date. Consequently, we cannot agree with Hill's contention that the restrictive covenants were automatically extended for 10 years after January 1, 1980, because a majority of the "then owners" of the lots had not agreed to eliminate or amend them. There is at least some doubt whether this is the meaning of the covenant. Therefore, we are constrained to apply the principle of law applicable to restrictive covenants that they are not favored in law and are strictly construed in favor of the free use of property; we, therefore, affirm the trial judge's judgment.
We have found no case in Alabama, and we have been cited to none, which holds that a covenant which reads as this one does, requires that the change of the restrictive *Page 385 
covenants be made on or before the date they are to expire. We did locate one case in which a majority of the lot owners in a subdivision attempted to remove the restrictions under a provision similar to the one here, but they sought to do itbefore the covenants were to expire. In White v. Lewis,253 Ark. 476, 487 S.W.2d 615 (1972), the Court held that covenants restricting the use of land in a subdivision to residential purposes which were to be binding for 25 years after the date of their recordation, after which they could be automatically extended for successive periods of 10 years, unless an instrument signed by a majority of the property owners was filed in which they agreed to change the covenants in whole or in part, were valid and could not be amended prior to the endof the 25-year period by an agreement signed by a majority of the property owners in the subdivision. The restrictive covenants in that case read:
 "All of the land described herein and any interest therein shall be held and owned subject to and in conformity with the following restrictions and covenants which, subject to being amended or cancelled as provided hereinafter, shall be and remain in full force and effect for twenty-five years, to-wit:
 "No lot shall be used except for residential purposes. No building shall be erected, altered, placed, or permitted to remain on any lot other than one one-family or two-family dwelling not to exceed one and one-half stories in height and a private garage for not more than two cars.
 "These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from the date these covenants are recorded, after which said covenants shall be automatically extended for successive periods of 10 years unless an instrument signed by a majority of the owners of the lots has been recorded, agreeing to change said covenants in whole or in part."
253 Ark., at 477, 487 S.W.2d, at 616.
Even in White v. Lewis there was a dissent by Justice Fogleman, who was of the opinion that a majority of the property owners could have changed or amended the covenants in whole or in part in that case within the 25-year period, or thereafter. The implication of the majority opinion in the Arkansas case is that had the agreement been made after the expiration of the 25-year period, the court would have reached a contrary conclusion.
We cannot agree with Hill's contention that the protective covenants could be eliminated or modified only every ten years. This interpretation of the first covenant would be inconsistent with this Court's policy that restrictions on the use of land are not favored and are strictly construed in favor of the free use of property. See, Springdale Gayfer's Store Co.v. D.H. Holmes Co., supra.
Because we have decided that the election agreement by the owners was effective when filed, and that the protective covenants were effectively eliminated, there is no need for this Court to address Hill's contention that the crosses, signs, and sheds on Rice's land were not part of the one single-family dwelling allowed by the fourth protective covenant.
The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON and BEATTY, JJ., concur.
HOUSTON, J., concurs in the result.