In re WALLACE'S FOURTH
SOUTHMOOR ADDITION
TO the CITY OF ENID.

PROPPS, INC., Appellant,

v.

Dorothy J. ROGERS, Trustee of the R.L. Rogers Childrens Trust, and Bessie L. Rogers and Robert L. Rogers, Co–Trustees of the Bessie L. Rogers Revocable Trust Dated June 12, 1992; Luran V. Brown, Appellees.

No. 81923.

Court of Appeals of Oklahoma,
Division No. 3.

April 5, 1994.

Dennis W. Hladik, Johnston & Hladik, Enid, for appellant.

Owen D. Wilson, Wilson & Wilson, Enid, for appellee.

---

## OPINION

GARRETT, Vice Chief Judge:

Propps, Inc. (Appellant) filed an action for a declaratory judgment that a protective covenant on property located in Wallace's Fourth Southmoor Addition, City of Enid, Oklahoma, had been amended or changed. Appellant desires to construct classrooms and activity rooms on the north 297 feet of Block three (3) to be used for convalescent home purposes, similar to those used at the Sunnyside Center, a convalescent home operated by Appellant and located on Block six (6) of the property. The use of the property, without the amendment, is restricted to use as a residential plot. Paragraph 1 of the covenants provides:

1. All lots within the subdivision shall be known and designated as residential building plots, except Blocks 5 and 6, which are reserved for retail business use and Tract A for Church use. No structures shall be erected, altered, plated or permitted to remain on any residential building plot other than one detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than 2 automobiles and other outbuildings incidental to residential use of the plot.

Appellant filed a motion for summary judgment and attached evidentiary materials including, *inter alia*, written ballots from property owners of the Addition. Appellant alleged in the motion that a majority of the owners had consented to the amendment and it was entitled to a declaratory judgment that the protective covenants were amended.

Appellees, who owned lots in the addition, objected to the proposed amendment. Appellees also filed a motion for summary judgment. The court denied Appellant's motion but sustained Appellees' motion. The trial court's order contained the following:

1. Pursuant to paragraph 10 of the protective covenants, any amendment, unless the vote is unanimous must take place at ten year intervals, with the next being on January 1, 1994.

2. For ballot counting purposes, the Petitioners are adjudged to be the owners of Lots One through Ten, Block Three and Lot One, Block Six, with each of those lots having one vote. Rogers is deemed to be the owner of Lots Two and Three, Block Six with each lot having one vote.

3. The ballot signed by Floyd Cline pertaining to Lot Eight, Block Two will not be counted as either a yes vote or a no vote for the reason that the property is owned by Floyd and Bonnie Cline and both have not joined in the vote....

Paragraph 10 of the covenants provides: [1]

10. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1974, at which time said covenants shall be automatically extended for successive periods of ten years unless by a vote of a majority of the then owners of the lots, it is agreed to change said covenants in whole or in part.

Subsequently, Appellant filed a second motion for summary judgment, wherein it alleged that its prior motion had not correctly set out the affirmative votes of the property owners in the text of the motion, although the ballots were attached showing the correct votes. Additionally, Appellant attached more ballots with affirmative votes and alleged the total votes (29 of 52 total) constituted a majority of the property owners and was sufficient to amend the covenant. The court denied Appellant's second motion and held "the issues were determined in the April 23, 1993, hearing and that at such hearing the Motion for Summary Judgment of Propps,

---

1. The proposed amendment of paragraph one of the covenants is:

    1. All lots within the subdivision shall be known and designated as residential building plots except Block Five and Six, which are reserved for retail business use and Tract A for church use, <u>and Block Three, which is reserved for convalescent home purposes. Convalescent home purposes will be defined to</u> include classroom and activity rooms.* No structure shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single family dwelling not to exceed two and one-half stories in height and a private garage for not more than two automobiles and other outbuildings incidental to residential use of the plot.

    * Underlined portion indicates the proposed addition.

Inc. was denied and the Motion for Summary Judgment of Rogers and Brown was sustained, which terminated the case and there was no basis for the filing of the Second Motion for Summary Judgment."

For reversal on appeal, Appellant contends:

1. The court erred in ruling that the protective covenants affecting Wallace's Fourth Southmoor Addition to the City of Enid were not modified by a majority vote of the property owners;

2. The court erred in its second ruling that the issues were determined in the first motion and that there was no basis for filing the second motion for summary judgment;

3. The court erred in denying Appellant's second motion for summary judgment;

4. The court erred in ruling that "Pursuant to paragraph 10 of the protective covenants, any amendment, unless the vote is unanimous must take place at ten year intervals, with the next being on January 1, 1994"; and

5. The court erred in ruling the ballot signed by Floyd Cline could not be counted because the other property owner, Bonnie Cline, did not join in the vote.

■ If the language in a restrictive covenant is ambiguous, the intention of the parties generally controls its construction. However, if the language is not ambiguous, the plain language of the covenant must be given effect. In construing a restrictive covenant, the rule requires strict construction favoring unencumbered use of real property. *Jackson v. Williams,* 714 P.2d 1017, 1021 (Okl.1985); *Pirtle v. Wade,* 593 P.2d 1098, 1100 (Okl.App.1979) (Cert. denied 1979). Neither *Jackson,* supra, nor *Pirtle,* supra, addressed the precise issue of whether a covenant can be amended or modified more often than a designated time period, and, if so, whether unanimity is required.

However, we find *Johnson v. Howells,* 682 P.2d 504 (Colo.App.1984), in which the Colorado Court of Appeals considered a covenant similar to the one at issue here, to be persuasive. The covenant, considered in *Johnson,* provided:

*"Change in Covenants:* These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty (20) years from the date hereof after which time said covenants shall be automatically extended for a successive period of 20 years unless an instrument signed by sixty ·percent of the then owners of the property has been recorded, agreeing to change said covenants in whole or in part."

The trial court held the amendments invalid because less than 60% of the needed property owners had agreed to them. The Colorado Court of Appeals agreed with the appellant that the trial court erred in holding the covenants could be amended within the 20 year period without unanimous consent of the owners. The *Johnson* Court stated:

We consider the crucial phrase to be 'after which time.' The plain meaning of the paragraph in question is that the covenants will be binding for twenty years, *after which time* they are automatically extended *unless* sixty percent of the property owners agree to change them and record an instrument to that effect....

To interpret the paragraph in question as the trial court did would be to render meaningless the reference therein to a twenty-year period. If the owners had intended that the covenants could be amended at any time by sixty percent of the owners, they would not have needed to include any reference to a twenty-year period.

Accordingly, the summary judgment in favor of plaintiffs is affirmed, but we hold that, *barring unanimous agreement* (emphasis added) among the owners to rescind or change the restrictive covenants, *see* 5 R. Powell, *The Law of Real Property* § 679[1] (P. Rohan rev. 1981); 2 *American Law of Property* § 9.23 (A.J. Casner ed. 1952), the covenants may not be amended within the initial twenty-year period. (Citations omitted) (Emphasis in original).

■ Similarly, the covenant in the instant case prescribes a definite time period of ten years for modification by a majority of the owners. We hold the phrase "at which time"

in paragraph 10 relates to "January 1, 1974"; and, the subsequent phrase, "for successive periods of ten years", refers to time periods ending on January 1, 1984, January 1, 1994, January 1, 2004, etc. The clear reference to "periods of ten years" would be meaningless if the covenant could be amended by a majority vote (less than unanimous) at any time on or after January 1, 1974. Thus, the plain language of the covenant causes the reference to "periods of ten years" to be a restriction, as to the frequency of amendment by less than a unanimous vote. Of course, if *every* owner votes to amend or change the covenant, then the restriction as to frequency of amendment by majority vote (less than unanimous) would not apply; and, a change by unanimous vote may be made at any time.

It must not be forgotten that while a "restrictive covenant" forbids or requires certain uses of the real property which it covers, it also confers vested rights in those owners who desire to own property where the subject uses are either required or forbidden. One of the vested rights is the method required to amend, change, or abolish the covenant.

In an equity case, an appellate court must review the record and may substitute its judgment on factual issues as long as it pays sufficient deference to the trial court's opportunity to judge the credibility of witnesses and to resolve disputed testimony. *Pirtle v. Wade*, 593 P.2d at 1099. The trial court's finding that the Clines had not both voted is obviously correct and supports the court's holding that the vote was not unanimous. Additionally, no one disputes the fact that other owners, besides the Clines, within the Addition had not voted for the amendment. The trial court thus properly sustained Appellees' motion for summary judgment. Also, Appellant's second motion for summary judgment, which did not establish unanimity among the property owners, was properly denied. The additional votes received did not help Appellant's position, being short of unanimous. It becomes unnecessary to consider Appellant's remaining arguments.

AFFIRMED.

HUNTER, P.J., and BAILEY, J., concur.