(163 App. Div. 445)

SCHERMERHORN et al. v. BEDELL.   (No. 275-157.)

(Supreme Court, Appellate Division, Fourth Department.   July 7, 1914.)

1. COVENANTS (§ 103*)—BUILDING RESTRICTIVE COVENANTS—VIOLATIONS.

A building restrictive covenant, that all buildings shall be 22 feet from the street line, is violated by the erection in front of buildings, 22 feet from the street line, of porches forming a substantial part of the buildings, though steps or ornamental portions within the prohibited area may be considered mere incidental encroachments.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. § 103.*]

2. INJUNCTION (§ 62*)—BUILDING RESTRICTIVE COVENANTS—ENFORCEMENT—EQUITY.

Where grantees of lots in a tract laid out in lots, blocks, and streets were induced to purchase by representations that the entire tract would be subject to building restrictive covenants, equity will protect them against the grantor and subsequent purchasers, with knowledge of the facts, and as against the grantor it is immaterial whether the covenants run with the land or not.

[Ed. Note.—For other cases, see· Injunction, Cent. Dig. §§ 124–127, 129; Dec. Dig. § 62.*]

3. COVENANTS (§ 84*) — BUILDING RESTRICTIVE COVENANT — ENFORCEMENT — PURCHASERS WITHOUT NOTICE.

Where a grantee of a lot in a tract divided into lots, blocks, and streets obtained a deed containing no building restrictive covenants, subsequent to execution by the grantor of deeds of other lots in the tract with building restrictive covenants, but not containing any covenant that the remainder of the lots should be governed by the same restrictions, had no actual notice of the covenants in the prior deeds, and the prior grantees had violated the building restrictions, the subsequent grantee was not bound by the covenant at the suit of the prior grantees.

[Ed. Note.—For other cases, see Covenants, · Cent. Dig. §§ 90–92; Dec. Dig. § 84.*]

4. COVENANTS (§ 108*)—BUILDING RESTRICTIONS—ENFORCEMENT—ESTOPPEL.

Where grantees of lots of a tract divided into lots, blocks, and streets violated a building restrictive covenant inserted in their deeds, they were estopped in equity to compel a subsequent grantee of a lot obtaining a deed containing no building restrictions to conform to the restrictions.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 175, 179–185; Dec. Dig. § 108.*]

Appeal from Equity Term, Onondaga County.

Action by Emma C. Schermerhorn and others, on behalf of themselves and all others in the same situation who may choose to come in and contribute to the expense of the action, against Charles M. Bedell.   From·a judgment for plaintiffs, adjudging that defendant remove·a building within a specified time and that plaintiffs recover costs and disbursements, defendant appeals.   Reversed, and complaint dismissed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

William Rubin, of Syracuse, for appellant.

Park & Bonsted, of Syracuse, for respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MERRELL, J.   The plaintiffs seek a mandatory injunction against the defendant, requiring him to remove that portion of the building which he has erected on lot 1 of block 4 of the Ballard tract (so called), in the city of Syracuse, N. Y., from that portion of the lot which is within 22 feet of McKinley avenue.   The plaintiffs are the owners in fee simple of four lots, situate in the Ballard tract (so called), in the city of Syracuse, and are lot 1 of block 1 and lots 6, 7, and 8 in block 4 of the Ballard tract.   The defendant is the owner of lot 1 of block 4 of the Ballard tract, and has recently erected an apartment house upon said lot, the walls of which extend to a point one foot from the sidewalk line on McKinley avenue, and face South Salina street.   The plaintiffs have each constructed dwellings upon their respective lots. The tract upon which these lots are located was originally owned by one William Ballard, who died in the year 1881, leaving a last will and testament in which he devised the tract of land to his widow, Harriet Ballard, for life, and after her death to his children, William J. Ballard, Stephen Ballard, Alfred Ballard, and Jennie Ballard.   The said Alfred Ballard is the defendant's grantor.   After the death of William Ballard his widow and devisees divided the tract into four blocks, known as blocks 1, 2, 3, and 4, and are intersected by McKinley avenue, State street, and South Salina street.   The tract was evidently laid out for residential purposes, and a map was filed in the Onondaga county clerk's office, setting forth the division of the tract into lots and giving their dimensions, on or about March 13, 1896.   After such division into lots, the same were sold to various grantees, and, with the exception of lot 7 in block 1, lot 3 in block 1, and lot 1 in block 4, all of the deeds contained a restrictive covenant in substantially the following form:

"The party of the second part agrees to place all buildings on said lot 22 feet from the street line; he also agrees to erect no buildings on this lot to be used for store, saloon, hotel or factory purposes."

None of the deeds contained any covenant on the part of the grantor or grantors that the remainder of the tract should be governed by and be subject to the same restrictions in respect to buildings as were contained in the several deeds to the individual grantees.   All of these restrictive covenants are personal in nature, and there is nothing upon the record to show that any building restrictions of any kind or nature were ever imposed upon lot 1 of block 4 now owned by the defendant.

The plaintiffs claim that certain representations were made at the time of several of the sales to the now owners of lots upon the Ballard tract to the end that the whole tract was subject to the same building restrictions set forth in their deeds, and the learned trial court has found that such representations were made to certain of the grantees, and, from the evidence and the situation of the property and the nature of the deeds given to nearly all of the lot owners, it is apparent that it was the original plan of the Ballard heirs to restrict the erection of buildings upon the whole tract within 22 feet of the street line, and that such plan was uniform in respect to the frontage on all of the streets intersecting said tract.

[1] The various purchasers, including the plaintiffs, have erected dwellings upon all of the Ballard lots, with the exception of lot 1 of block 1, lot 17 of block 2, lots 2 and 3 of block 4, and lot 15 of block 3. The main walls of all of the dwellings facing upon McKinley avenue are substantially 22 feet from the margin of the avenue, with the exception of the dwellings erected upon the lots cornering upon State street and McKinley avenue. The main portion of the building on the southeast corner is 13.4 feet and the bay window is 11.4 feet from the street line of McKinley avenue; the main portion of the building on the northeast corner is 18.7 feet and the bay window is 17.2 feet from the street line of McKinley avenue; the main portion of the building on the southwest corner is 17.9 feet and the bay window is 15.4 feet from the street line of McKinley avenue; and the main portion of the building on the northwest corner, owned by the plaintiff Tennant, is 11 feet and the bay is 9 feet distant from the street line of McKinley avenue. The trial court has held that in front of each house on McKinley avenue was a porch which was constructed in connection with the house and average between 13 and 15 feet from the street line. While steps or ornamental portions might be considered mere incidental encroachments, a porch in the nature of those erected in front of each house in McKinley avenue is a substantial part of the house and is a building within the terms of the restriction. So that it is evident that each of the owners of lots on the Ballard tract facing McKinley avenue, including the plaintiffs, have themselves violated the terms of the restrictive covenants contained in their respective deeds, and that the plaintiff Tennant has built substantially 11 feet over the restricted line. Whether these encroachments were the result of a general understanding or deliberate violations of the covenants contained in the respective deeds of the lot owners does not clearly appear.

[2, 3] The plaintiffs claim that, before purchasing his lot, it was the duty of the defendant to search all the titles growing out of the division of the Ballard tract, and that he should be presumed to have knowledge of the restrictive covenants contained in all the deeds from the Ballard heirs, and that by reason of these covenants and the general location of the dwellings on McKinley avenue he should be presumed to have had notice that the entire tract, including defendant's lot, was subject to the same building restrictions contained in the plaintiffs' deeds and the deeds of other lot owners, and that the court should hold that the defendant, at the time he purchased the premises, had constructive notice of those facts.

The trial court has held that the defendant had no actual notice of any restrictions until after he had begun the construction of his building; that there was no restriction in the immediate chain of title to defendant's lot or in any of the conveyances or maps which passed title to defendant's lot, and these findings seem to be in conformity with the evidence in the case. Alfred H. Ballard, who was the defendant's grantor, testified that the building restrictions did not cover the corner lots, and the most that can be claimed is that to some of the grantees representations were made by the grantors and their agents

that the entire tract would be sold subject to the same building restric-
tions contained in the plaintiffs' deeds. If the plaintiffs were induced
to purchase their respective lots by such representations, equity would
protect them against the grantors and also against subsequent pur-
chasers having knowledge that plaintiffs were so induced to purchase
and that the whole tract was subject to the same building restrictions
contained in plaintiffs' deeds. Tallmadge v. East River Bank, 26 N.
Y. 105.

As against the grantor in such case, it would not matter whether the
covenants ran with the land or not. It is apparent therefore that, the
defendant having no actual notice of the restrictions sought to be en-
forced, the plaintiffs cannot succeed, unless from the facts and cir-
cumstances of the case and the situation of the property the defendant
would be deemed to have had constructive notice that lot 1 in block 4
was subject to the same building restrictions contained in plaintiffs'
deeds, and that plaintiffs were induced to purchase their respective
lots ,by representations made by their grantors to the effect that the
whole tract was subject to the same restrictions and would be so con-
veyed.

As before stated, there is nothing in the chain of title of defendant's
lot, nor in the chain of title of lot 3, block 1, which is the corner lot
opposite defendant on the corner of South Salina street and McKinley
avenue, which in any way points to any restrictions in respect to build-
ings to be erected on either of the two lots; nor is there any covenant
contained in any of the deeds on the part of the grantors that either
the remainder of the tract or the defendant's lot would be subject to
any restrictions whatever. The covenants contained in all of the deeds
are personal in nature and are not mutual.

I do not think that even the most persistent searching of the titles
would have revealed any covenant restricting the construction of build-
ings upon defendant's lot, either directly or by implication. Nor do I
think that the location of the houses on McKinley avenue and upon the
other streets upon which the other lots are located was a circumstance
from which notice could be implied that there was any restriction which
affected lot 1 of block 4.

Nearly all of the owners had built over the restricted line, and, even
if the defendant had discovered the restrictions contained in the plain-
tiffs' deeds, he naturally would not have thought it necessary to in-
quire of those who had obviously violated the restrictive covenants.
The plaintiff Tennant had himself built within 11 feet of the margin
of McKinley avenue, and it could hardly be expected that persons vio-
lating the plain language of their own conveyances would ever claim
that the defendant, building upon a lot having no restrictions in the
chain of title, had no right to build within the 22-foot line originally
established in the other deeds. The defendant clearly had a right
under the circumstances to rely upon his own chain of title, and, having
paid a substantial sum for his lot, could not be deprived of his rights
to build thereon, unless he had notice of all of the facts essential to
bind the original grantors.

[4] In a court of equity the plaintiffs would be estopped by their own acts and encroachments from claiming that the original 22-foot restriction now applies to the defendant's lot. Even if notice of the restriction could be implied from the facts, the court would be reluctant to grant the relief asked at the insistence of plaintiffs, who have themselves violated and ignored the covenants which they now seek to enforce against the defendant. Nor would it be equity to take as the present standard of building upon McKinley avenue the structure of the plaintiff Tennant, who has built 11 feet over the original 22-foot line.

As before intimated, I do not think that the facts and circumstances of the case would warrant a holding that the defendant had constructive notice of any restrictions upon his lot. Bradley v. Walker, 138 N. Y. 292, 33 N. E. 1079; Knapp v. Hall, 70 Hun, 17, 23 N. Y. Supp. 1109, affirmed 147 N. Y. 712, 42 N. E. 724.

In the opinion of the trial judge, Holt v. Fleischman, 75 App. Div. 593, 78 N. Y. Supp. 647, is said to be "on all fours like the present case." But in that case the grantor owned 155 feet on Twenty-Ninth street in New York City, and sold one lot to the plaintiff's grantor by a deed which contained a covenant by the grantee that the front of the building to be erected there should be placed on a line with the front of the buildings to the easterly thereof, and also a covenant by the grantor that all buildings to be constructed on the balance of the lot should also be so built.

In Tallmadge v. East River Bank, also relied upon, the map of the premises from which the sales were made reserved a strip of eight feet upon each side of the street upon which no buildings should be built, and in Bimson v. Bultman, 3 App. Div. 198, 38 N. Y. Supp. 209, also relied on by the trial court, a map was issued and circulated, upon the reverse side of which there appeared an advertisement, at the end of which was the following statement:

"The entire tract restricted and controlled by one management. All buildings must be of brick or stone."

And in addition signs were placed upon the premises to the same effect.

In the above cases the respective defendants, having been put upon inquiry, could have ascertained the above facts. But in the case at bar, even if the defendant had made the most careful inquiry, no such documentary evidence could have been discovered.

Notwithstanding the great injury which these plaintiffs and other homemakers upon the Ballard tract have suffered by the defendant's building, of which damage the photographs bear most convincing testimony, I am afraid they are without legal remedy.

The judgment appealed from should be reversed and plaintiffs' complaint dismissed, with costs to the appellant. All concur.