E. J. McGUIRE and Billy McGuire *v.* Jimmy BELL, Dr.
B.C. Criswell, and J.R. Young

88-136                                              761 S.W.2d 904

Supreme Court of Arkansas
Opinion delivered December 12, 1988

*Martin, Vater, Karr & Hutchinson*, by: *Charles Karr*, for appellants.

*Gant & Gant*, for appellees.

JACK HOLT, JR., Chief Justice. In this action, the appellants,

E.J. and Billie McGuire, challenge the trial court's ruling that restrictive covenants limiting the use of property in the Vista Hills and Loch Lomond Additions of Van Buren, Arkansas, to single-family residences are applicable to the McGuires' property, Tract 7, and question the trial court's refusal to issue an order enjoining the appellees, who are property owners in the Vista Hills Addition and the adjoining Loch Lomond Addition, from interfering with the sale of the property. In addition, they take issue with the trial court's failure to declare that the covenants do not prohibit a residential facility for the mentally retarded or developmentally disabled. In the alternative, the McGuires argue that if the covenants do encompass residential facilities for the mentally retarded or developmentally disabled, the court should have declared that State enforcement of the covenants denies such persons equal protection of the law. We find no error and affirm the judgment of the trial court.

In the 1950's Vista Acres, Inc., bought a 600 acre tract of land in Van Buren, Arkansas, for development of residential subdivisions and lots. In 1960, Vista Acres began developing a portion of the tract into two residential subdivisions, the Vista Hills and Loch Lomond Additions. Vista Acres developed the two subdivisions in stages.

On April 15, 1960, Vista Acres filed a plat of Lots 1 through 62, Vista Hills Addition, and a bill of assurance for the platted lots (except Lot 16) containing, in pertinent part, the following language:

RESTRICTIONS FOR VISTA HILLS ADDITION
TO THE CITY OF VAN BUREN, ARKANSAS

3. All lots in Vista Hills Addition shall be used for residential purposes only. No building shall be used or structure shall be erected, altered, placed, or permitted on any lot other than one single family dwelling unit, private garages for the occupants' vehicles, and other out buildings incidental to the residential use of the lots.

On September 13, 1961, Vista Acres filed a plat of Lots 63 through 81 and 83 through 90, Vista Hills Addition, and Lots 1 through 12, Loch Lomond Addition. On this date, Vista Acres also filed a bill of assurance for Lots 63 and 90, Vista Hills

Addition, and Lots 1 through 12, Loch Lomond Addition, containing essentially the same restrictions as the first bill of assurance.

On November 20, 1961, Vista Acres filed a plat for Lots 91 through 99, Vista Hills Addition, with a notation that Lots 91 through 99 are subject to all restrictions contained in the bills of assurance applying to Lots 1 through 15 and 17 through 62, Vista Hills Addition. The plat contains no acknowledgment.

On January 12, 1962, Vista Acres filed an additional bill of assurance for Lots 63 through 90, Vista Hills Addition, and Lots 1 through 12, Loch Lomond Addition, containing virtually the same restrictions as the first two bills of assurance.

From March 16, 1962, to February 24, 1965, Vista Acres filed plats for Lots 13 through 21, Loch Lomond Addition, and Lots 100 through 102, and Tracts 2 through 6, Vista Hills Addition. These unacknowledged plats incorporate by reference the restrictions contained in the bills of assurance.

On December 13, 1965, Vista Acres filed a plat for Tract 7, Vista Hills Addition, containing the following notation:

### RESTRICTION

Tract 7 shall be limited to a maximum of three (3) residential dwellings.

Restrictive covenants are filed as separate documents. The covenants as filed for Lots 1 through 99, Vista Hills Addition, Lots 100 through 102, Vista Hills Addition, Lots 103 through 105, Vista Hills Addition, and Lots 1 through 21, Loch Lomond Addition, shall be applicable to Tract 7, Vista Hills Addition.

The plat contains no acknowledgment. Vista Acres did not file a bill of assurance for Tract 7.

On the same day, Vista Acres conveyed by corporation deed Tract 7, Vista Hills Addition, to E.K. Ragge, et ux. The corporation deed contains the following notation:

Tract 7, Vista Hills Addition to the City of Van Buren, Arkansas, as per plat filed December 13, 1965. Subject to

recorded easements and restrictive covenants.

On September 27, 1972, the Ragges conveyed Tract 7, Vista Hills Addition, to Albert Williams, et ux. On July 31, 1974, the Williamses conveyed the property to Ed and Joyce Hopkins. On July 2, 1976, Ed and Joyce Hopkins conveyed the property to Joyce Hopkins. The deeds for these transfers do not refer to restrictive covenants.

On November 5, 1976, Joyce Hopkins executed and filed a document in the office of the Circuit Court of Crawford County entitled "Removal of Restriction by Sole Owner," stating that the restrictive covenants contained in the plat for Tract 7 are hereby revoked and rescinded.

On July 14, 1978, Joyce Hopkins conveyed Tract 7 to appellants E.J. and Billie McGuire by a warranty deed containing no restrictive covenants.

Thereafter, the McGuires built a 17,000 square foot, four-level combination home and corporate headquarters on the property. In December of 1984, the McGuires contracted to sell the property to Mr. and Mrs. Smithson for $700,000.00. The Smithsons intended to convert the property into a residential care facility for the mentally retarded and developmentally disabled. When the Smithsons' intended use became known, opposition in the neighborhood developed. At the conclusion of a public meeting where residents in the Vista Hills and Loch Lomond Additions expressed opposition to the sale of the property for use as a residential care facility, Mr. Smithson announced that he was abandoning his plan to use the property for a residential facility. Subsequently, the Smithsons breached their contract to buy the McGuires' property.

After this transaction fell through, the McGuires found another prospective purchaser, Oman Ising, who was interested in using the property for purposes similar to that of the Smithsons. Neighborhood opposition continued. Thereafter, Ising backed out of the proposed transaction. The McGuires have been unable to sell their property.

On June 10, 1985, the McGuires filed a class action suit against the appellees alleging among other things that (1) "[n]o restrictive covenants were ever established in a manner author-

ized by law; (2) [d]efendants have no standing to challenge Plaintiff's sale of Tract 7 or the development of Tract 7 in a manner inconsistent with the restrictive covenants for the Vista Hills and Loch Lomond Additions; and (3) [d]efendants have lost their right to enforce any restrictive covenants for Tract 7 by laches or acquiescence." The McGuires prayed (1) that the court enter a declaratory judgment that the restrictive covenants for the subdivisions are not applicable to Tract 7 or, in the alternative, a decree cancelling the restrictive covenants because of changed conditions; and (2) that the court enter an order enjoining the appellees from interfering with the McGuires in their attempts to sell Tract 7.

In an amended complaint, the McGuires made two additional allegations:

> (1) State enforcement of restrictive covenants through the courts to prohibit residential facilities for the mentally retarded or other developmentally disabled denies such mentally retarded or developmentally disabled persons equal protection of the laws in violation of the fourteenth amendment, the Constitution of Arkansas, and the public policy of Arkansas; and

> (2) Even if the restrictive covenants were held applicable to Tract 7, such restrictive covenants do not prohibit a residential facility for mentally retarded or developmentally disabled.

The McGuires also asked that the trial court enter a declaratory judgment that the restrictive covenants do not prohibit a residential facility for the mentally retarded or developmentally disabled.

At trial, Tommy Van Zant, the developer of the Vista Hills and Loch Lomond Additions, testified that he and the other partners in the development never intended Tract 7 to be used for other than single-family residential purposes.

In its decree, the trial court denied the McGuires' request for a declaratory judgment that the restrictive covenants are not applicable to Tract 7. In doing so, it concluded that the restrictive covenants are applicable to Tract 7 for the following reasons:

(1) There are no commercial enterprises or other buildings in the Vista Hills and Loch Lomond Additions.

(2) The McGuires purchased and acquired Tract 7 in a residential neighborhood fully aware of the restrictive covenants filed of record and the nature of the subdivisions being residential single-family dwellings.

(3) There is no question that the owner's scheme or plan was to develop residential subdivisions with single-family dwellings.

(4) Joyce Hopkins' action in endeavoring unilaterally to remove the restrictive covenants was null and void and of no effect in that there is no evidence that anyone involved in the litigation received notice of her action.

In denying the McGuires' request for a decree cancelling the restrictive covenants, the trial court found that there was no proof of changed conditions or any other reason to cancel the covenants.

The trial court declined to make a ruling concerning the McGuires' contentions that (1) State enforcement of restrictive covenants through the courts to prohibit residential facilities for the mentally retarded or other developmentally disabled persons denies such mentally retarded or developmentally disabled persons equal protection of the laws in violation of the fourteenth amendment, the Constitution of Arkansas, and the public policy of Arkansas and that (2) the restrictive covenants do not prohibit a residential facility for the mentally retarded or developmentally disabled on the grounds that the McGuires failed to present sufficient proof on these two issues and failed to establish that "there is presently a sale, program, or proposal of this kind involved between the parties."

Finally, the court denied the McGuires' request for injunctive relief, finding as follows:

(1) The respondent's desire to keep the residential single-family scheme of the neighborhood intact is a legitimate concern.

(2) Respondents took no actions other than expression of their opinion at public meetings and in articles printed by the news media against the sale of the McGuires' property

for use as a facility for mentally handicapped persons.

(3) They have a right to freedom of expression and freedom to organize to do so.

(4) The proof in the case does not indicate that the respondents have prevented the sale of petitioner's property. The prospective buyers have, for their own reasons rather than for any alleged prevention by respondents, withdrawn from the purchase of the property.

(5) The petitioners own and occupy their property and are free to sell or dispose of it without interference from anyone. That, however, in this case the opposition of respondents is not found to be such an interference as would prevent a sale or disposition by petitioners of their property.

(6) The petitioners have not suffered or shown any irreparable harm imminent or occasioned by the respondents.

From the trial court's final decree, the McGuires appeal.

## I. DECLARATORY RELIEF.

### A. THE RESTRICTIVE COVENANTS ARE NOT APPLICABLE TO TRACT 7.

The McGuires contend the trial court erred in failing to grant a declaratory judgment that the restrictive covenants are not applicable to Tract 7. We disagree.

On appeal we consider the evidence in the light most favorable to the appellee. *Constant* v. *Hodges*, 292 Ark. 439, 730 S.W.2d 892 (1987). Although we try chancery cases de novo on the record, we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Milligan* v. *General Oil Co.*, 293 Ark. 401, 738 S.W.2d 404 (1987).

"Courts do not favor restrictions upon the use of land, and if there is a restriction on the land, it must be clearly apparent." *Harbour* v. *Northwest Land Co.*, 284 Ark. 286, 681 S.W.2d 384 (1984). *See also Shermer* v. *Haynes*, 248 Ark. 255, 451 S.W.2d 445 (1970). In construing covenants, the intention of the parties, as shown by the covenants, shall govern. *White* v. *Lewis*, 253 Ark. 476, 487 S.W.2d 615 (1972).

■ The ordinary method of establishing restricted districts when new subdivisions are surveyed and platted is to file a plat and bill of assurance, whereby the owner obligates himself not to convey except in conformity with the restrictions imposed in the bill of assurance. *Hays v. Watson*, 250 Ark. 589, 466 S.W.2d 272 (1971); *Moore v. Adams*, 200 Ark. 810, 141 S.W.2d 46 (1940). However, it is not always essential that there be a bill of assurance filed with the plat of the subdivision; the restricted use may be annexed to the conveyances of the land. *Harbour, supra.* The theory upon which these restrictions are imposed is that one taking title to land with notice that it is subject to restrictions upon its use will not, in equity and good conscience, be permitted to violate its terms. *Moore, supra.*

■ Where no general plan of development exists, restrictive covenants in either a bill of assurance or a deed conveying the land are not enforceable. *Constant, supra. See Harbour, supra.* The test of whether such a plan exists is whether substantial common restrictions apply to all lots of similar character or similarly situated. *Id.*

The McGuires do not contest the trial court's finding that a general plan of development for the Vista Hills Addition exists. Instead, they argue that the restrictive covenants in the three bills of assurance filed on April 15, 1960, September 13, 1961, and January 12, 1962, are not applicable to Tract 7 for the following reasons: (1) the bills were not executed by the owners as required by Ark. Code Ann. § 18-12-103 (1987), and, therefore, the bills and restrictive covenants contained therein are invalid; and (2) the plat filed for Tract 7 was not acknowledged as required by Ark. Code Ann. § 16-47-101 (1987), and, therefore, the developer's attempt in the plat to incorporate by reference the covenants contained in the bills of assurance filed on April 15, 1960, September 13, 1961, and January 12, 1962, was invalid.

The McGuires first argue that the bills of assurance and restrictions are invalid because the bills were not executed by all of the owners of the property.

Ark. Code Ann. § 18-12-103 provides as follows:

No restrictive or protective covenants affecting the use of real property nor any instrument purporting to restrict the

use of real property shall be valid or effective against a subsequent purchaser or owner of real property unless the restrictive or protective covenants or instrument purporting to restrict the use of the real property is executed by the owners of the real property and recorded in the office of the recorder of the county in which the property is located.

The fee owner of the two subdivisions, Vista Acres, Inc., executed the three bills of assurance in question. It is the McGuires' contention, however, that the failure of the mineral owners to join in the execution or filing of the bills of assurance renders the bills invalid. We decline the invitation to construe the phrase contained in § 18-12-103, "owners of said real property," to require mineral owners to join in the execution of bills of assurance before covenants can affect the use of real property. The requirements of the code provision were sufficiently met by the execution by Vista Acres of the bills. The McGuires' argument is without merit.

The McGuires' contention that no covenants are applicable to Tract 7 because the plat filed with the circuit court was not acknowledged is also meritless.

An instrument affecting real estate must be acknowledged before it shall be admitted to record. Ark. Code Ann. § 16-47-101 (1987). No instrument purporting to restrict the use of real property shall be valid or effective against a subsequent purchaser unless the instrument is recorded. Ark. Code Ann. § 18-12-103 (1987) [originally enacted as 1965 Ark. Act 395]. Prior to the enactment of Act 395, we held that restrictive covenants in an instrument were binding upon a subsequent purchaser with actual knowledge even though the instrument was not properly acknowledged or recorded. *See Prince v. Alford*, 173 Ark. 633, 293 S.W. 36 (1927). We have not considered whether this holding is still sound in light of Act 395. However, we need not consider this issue in the case at bar since the McGuires were placed on notice independent from the unacknowledged plat.

A subsequent purchaser of land is charged with notice of restrictions contained in every recorded deed in his chain of title. *See* 7 G. Thompson, *Commentaries on the Modern Law of Real Property*, § 3170 (Repl. 1962). *See also Webb v. Robbins*, 77 Ala. 176 (1884); *Morris v. Tuscaloosa Mfg. Co.*, 83 Ala. 565,

3 So. 689 (1888). A landowner is bound by restrictions that appear in a properly recorded deed in his chain of title even though the instrument conveying title to him does not contain the restrictions. *See Buffalo Academy of the Sacred Heart* v. *Boehm Bros., Inc.*, 267 N.Y. 242, 196 N.E. 42 (1935); *Oak Lane Realty Corp.* v. *Trinity Evangelical Church*, 13 Misc. 2d 708, 172 N.Y.S.2d 95 (1958); *Cleveland Realty Company* v. *Hobbs*, 261 N.C. 414, 135 S.E.2d 30 (1964).

A properly acknowledged and recorded deed in the McGuires' chain of title from Vista Acres to E.K. Ragge, et ux., contains the following notation:

> Tract 7, Vista Hills Addition to the City of Van Buren, Arkansas, as per plat filed December 13, 1965. *Subject to recorded easements and restrictive covenants.* [Emphasis added.]

In light of evidence presented at trial that the developer of the Vista Hills Addition intended Tract 7 to be subject to single-family-residential use restrictions, we conclude that the phrase, "[s]ubject to recorded easements and restrictive covenants," encompasses single-family-residential use restrictions contained in plats or bills of assurance for the Vista Hills Addition. The only instruments for the Vista Hills Addition explicitly containing such restrictions are the bills of assurance filed on April 15, 1960, September 13, 1961, and January 12, 1962, all of which were properly acknowledged and recorded.

Accordingly, we hold that the language in the deed in the McGuires' chain of title from Vista Acres to the Ragges effectively incorporates the single-family-residential use restrictions in these bills of assurance. Thus, it is immaterial that the plat for Tract 7 was not acknowledged or did not validly incorporate the restrictions. The McGuires are charged with constructive notice of these restrictions and are bound by them notwithstanding the fact that the deed conveying title to the McGuires does not contain any reference to restrictive covenants. *See Buffalo Academy of the Sacred Heart, Inc., supra; Oak Lane Realty Corp., supra; Cleveland Realty Company, supra; Morris, supra; Webb, supra.*

## B. THE RESTRICTIVE COVENANTS DO NOT

PROHIBIT THE USE OF TRACT 7 AS A RESIDEN-
TIAL FACILITY FOR THE DEVELOPMENTALLY
DISABLED.

■  The McGuires argue that the trial court erred in failing to grant a declaratory judgment that the restrictive covenants limiting the use of their property to single-family residences do not prohibit a residential facility for the mentally retarded or developmentally disabled. We have not addressed the question of whether and under what circumstances a residential care facility or group home for the mentally retarded or developmentally disabled can be considered a residence or, more narrowly, a single-family residence. However, we do not consider this point on appeal because, as the trial court found, the McGuires did not present proof at trial that at the present time there is a proposed sale of the property for use as a residential care facility. Without detailed information concerning a pending sale of the property and the specific use for which it will be purchased, any ruling on whether the restrictive covenants applicable to the McGuires' property prohibit its use as a residential facility for the developmentally disabled would be subject to speculation and conjecture, especially in light of the analysis required by the applicable authority of other jurisdictions which have dealt with this question. *Jackson v. Williams*, 714 P.2d 1017 (Okla. 1985); *Clark v. Manuel*, 463 So.2d 1276 (La. 1985); *Gregory v. Dept. of Mental Health*, 495 A.2d 997 (R.I. 1985); *City of Livonia v. Dept. of Social Services*, 423 Mich. 466, 378 N.W.2d 402 (1985); *Omega Corp. of Chesterfield v. Malloy*, 228 Va. 12, 319 S.E.2d 728 (1984); *J.T. Hobby and Son, Inc. v. Family Homes, Etc.*, 46 N.C. App. 741, 266 S.E.2d 32 (1980). We will not undertake to declare the legal effect of case law upon a set of facts which is hypothetical, future, contingent, or uncertain. *See Andres v. First Arkansas Development Finance Corp.*, 230 Ark. 594, 324 S.W.2d 97 (1959). *See also Caldwell v. Gurley Refining Co.*, 755 F.2d 645 (8th Cir. 1985); *Cummings v. City of Fayetteville*, 294 Ark. 151, 741 S.W.2d 638 (1987).

Moreover, even if the Smithsons or Oman Ising presently had a contract with the McGuires to buy the property for precisely the use described in the record, we would not reach the issue because the McGuires failed to present evidence at trial as to (1) the extent of the educational training or medical and

nursing care that the proposed center would provide, (2) the function of a housekeeper, if one would be provided, and (3) whether the counselors would serve on a rotating or permanent basis. *See Jackson, supra; Clark, supra; Gregory, supra; City of Livonia, supra; Omega Corp. of Chesterfield, supra; J.T. Hobby and Son, Inc., supra.* In sum, we do not have the appropriate facts before us to resolve this issue.

## C. STATE ENFORCEMENT OF RESTRICTIVE COVENANTS TO PROHIBIT RESIDENTIAL FACILITIES FOR THE MENTALLY RETARDED OR DEVELOPMENTALLY DISABLED DENIES SUCH PERSONS EQUAL PROTECTION OF THE LAWS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE CONSTITUTION.

■ The McGuires argue that they are entitled to a declaratory judgment that enforcement of restrictive covenants to prohibit residential facilities for the mentally retarded or developmentally disabled denies such persons equal protection of the law. Because they have not supported this point on appeal with convincing authority or argument, we do not address it.

In support of their contention, they make the following statements:

The decision by the United States Supreme Court in *Shelley* v. *Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), must be considered when examining the enforcement of restrictive covenants to prohibit residential facilities for the developmentally disabled. In *Shelley* the Court invalidated a private Restrictive Covenant that discriminated on the basis of race because judicial enforcement of the covenant would constitute state action within the meaning of the 14th Amendment. In this regard, the case of *City of Cleburne, Texas* v. *Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), is helpful. There the United States Supreme Court held that requiring a special use permit for a proposed group home for the mentally retarded violated the equal protection clause in that the requirement, in the absence of any rational basis in the record for believing that a group home would pose any special threat to the city's legitimate

interest, appeared to rest on an irrational prejudice against the mentally retarded. The zoning ordinance as applied was, therefore, struck down.

The McGuires cite no other cases besides *Kraemer* and *City of Cleburne* in support of their equal protection argument. These cases are not germane to the facts of the instant case. Moreover, they make no convincing argument in support of their position. We do not consider arguments on appeal that are unsupported by convincing argument or authority, unless it is apparent without further research that they are well taken. *Cummings, supra.*

## II. INJUNCTIVE RELIEF.

The McGuires contend that the trial court erred in refusing to issue an order enjoining the appellees from interfering with the sale of the property because (1) no valid restrictive covenants were ever adopted in accordance with applicable law; (2) appellees have lost their rights to enforce the covenants as to Tract 7 by abandonment or laches and acquiescence; (3) the restrictive covenants do not prohibit the use of Tract 7 as a residential facility for the developmentally disabled; and (4) the appellees have no standing to enforce the restrictive covenants as to Tract 7. For the reasons stated below, we do not address this argument.

The McGuires fail to explain how their contentions relate to the issue they have asked us to consider: Whether the trial court erred in denying their request for any injunction. Moreover, they do not address the trial court's findings regarding the injunction. Accordingly, we will not consider their contention that the trial court erred in refusing to issue an order enjoining the appellees from interfering in the sale of the property or their arguments regarding standing and laches in support of this contention. We note that we addressed the other two arguments in section I of this opinion.

It appears that the McGuires also ask us to rule on the issues of standing and laches for purposes unrelated to the trial court's failure to grant an injunction. However, they did not ask the trial court nor do they ask this court for declaratory relief on these issues. Instead, they simply alleged at trial and now allege on appeal that the appellees lack standing and are barred by abandonment or laches and acquiescence. In addition, they do not

link the issues of standing and laches to their requests for declaratory relief on appeal, nor did they at the trial level. Under the circumstances, we do not consider these issues.

Affirmed.